TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
JONATHAN GALATZAN
Assistant United States Attorney
Chief, Asset Forfeiture Section
VICTOR A. RODGERS (Cal. Bar No. 101281)
MAXWELL COLL (Cal. Bar No. 312651)
Assistant United States Attorney
Asset Forfeiture/General Crimes Sections
    Federal Courthouse, 14th Floor
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-2569/1785
    Facsimile: (213) 894-0142/0141
    E-mail: Victor.Rodgers@usdoj.gov
           Maxwell.Coll@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>        v.<br><br>$256,276.00 IN U.S. CURRENCY AND APPROXIMATELY 26 MISCELLANEOUS COINS,<br><br>    Defendants. | Case No. 2:21-cv-07310<br><br><u>COMPLAINT FOR FORFEITURE</u><br><br>18 U.S.C. § 981(a)(1)(A) & (C)<br><br>[FBI] |

    Plaintiff United States of America brings this claim against defendants $256,276.00 in U.S. Currency and Approximately 26 Miscellaneous Coins (collectively, "the defendants"), and alleges as follows:

/ / /

## JURISDICTION AND VENUE

1. The government brings this *in rem* forfeiture action pursuant to 18 U.S.C. § 981(a)(1)(A) & (C).

2. This Court has jurisdiction over the matter under 28 U.S.C. §§ 1345 and 1355.

3. Venue lies in this district pursuant to 28 U.S.C. § 1395.

## PERSONS AND ENTITIES

4. The plaintiff in this action is the United States of America.

5. The defendants in this action are $256,276.00 in U.S. Currency and Approximately 26 Miscellaneous Coins seized by law enforcement officers on or about March 22, 2021, at U.S. Private Vaults at 9182 Olympic Boulevard in Beverly Hills, California.

6. The defendant currency is currently in the custody of the United States Marshals Service in this District while the 26 Miscellaneous Coins are currently in the custody of the FBI, where those items will remain subject to this Court's jurisdiction during the pendency of this action.

7. The interests of Stanley Hudson may be adversely affected by these proceedings.

## BASIS FOR FORFEITURE

### Background Regarding U.S. Private Faults

8. U.S. Private Vaults ("USPV") is a company that was in the business of renting safe deposit boxes to customers. By providing and promoting total anonymity, USPV catered to and attracted criminals who sought to keep their identities and the source of their cash beyond the reach of banks, regulators, the IRS, and law enforcement.

1     9. The company's primary pitch to customers was anonymity, as reflected in its website that provided "Complete Privacy; Biometric Identification; No ID Required." USPV also boasted in its website "Our business is one of the very few where we don't even want to know your name. For your privacy and the security of your assets in our vault, **the less we know the better**." This advertisement appealed to persons engaged in activities which they wished to hide from legal authorities and law-abiding financial institutions.

    10. USPV also posted on its website "Four Reasons to Store Your Gold At USPV," information designed to market the company's services, which led to many involved in criminal activities to rent boxes from USPV. The posting asserted:

> Banks require clients to provide their social security number and a photo identification as a condition for renting a safe deposit box. Your information is then filed in the bank's central data system. This information can be easily accessed by government agencies (such as the IRS) or attorneys armed with court orders. If no one is aware you have a safe deposit box, the contents (your gold) are much safer.

By advocating a service which circumvented the IRS and persons "armed with court orders," customers engaged in illegal activity were attracted to and ultimately stored and secreted their criminal proceeds (which the government has a legitimate interest in) at USPV, instead of at banks or law-abiding financial institutions where their illegal activities would more likely be uncovered.

    11. In the same post, "Four Reasons to Store Your Gold At USPV", USPV stated:

> As government chartered institutions, banks are now required to file "suspicious activity reports." . . . U.S. Private Vaults is not subject to federal banking laws and would only cooperate with the government under court order.

By marketing services in this fashion, some persons who ultimately became USPV customers, were attracted by the advertisements because USPV's safe deposit box storage facilities offered them a much safer place to store their illegal criminal proceeds, unlike law-abiding banks, so as to eliminate their fear of apprehension by law enforcement and in promotion of their illegal activities.

12. Further, and in order to shield customers from having law enforcement uncover their illegal activity, USPV encouraged its customers pay their box rental fees in cash. In addition, USPV charged customers significantly higher prices than those charged by major banks, because USPV offered something which legitimate banks do not: anonymity, a place to store illegally obtained cash, tips and assistance in avoiding law enforcement and a willingness to look the other way with regard to all types of criminal conduct. And one of USPV's owners has gone so far as to brag about bringing to USPV individuals selling marijuana and other drugs illegally, based on the owner's connections, by marketing USPV as a safe place for those criminal actors and potential USPV customers to store their ill-gotten gains.

13. Not surprisingly, because USPV's business model is designed to appeal and cater to criminals, USPV has repeatedly been used by criminals to store criminal proceeds. Over the years, the contents of specific boxes at USPV have been forfeited because they are the proceeds of criminal activity. For example, on July 1, 2019,

officers seized $215,653 from Michael Beaver, as he was leaving USPV, and then seized an additional $1,448,700 from his USPV boxes. Records from the Employment Development Department (the "EDD"), which is the California agency to whom employers must report wages earned by their employees, showed Beaver had no legitimate employment income. In addition, Beaver's phones revealed evidence of drug trafficking activity, and the in excess of $1.6 million funds were forfeited as proceeds of unlawful activity.

14. On April 21, 2019, a victim was kidnapped in San Diego and brutally tortured in a warehouse, where the victim was hit with sticks and baseball bats; stripped naked; hit with a hammer on the victim's toes; and set on fire. Allan Newman was arrested and charged with kidnapping for ransom, attempted murder, torture and aggregated mayhem relative to the beating. The victim had been employed by a group of people who were engaged in distributing counterfeit marijuana vaping cartridges, and the group believed the victim had stolen a suitcase full of cash, which a vape cartridge customer had left at the warehouse. A portion of the funds had been placed by the victim's ex-wife in a safe deposit box at USPV, which the ex-wife retrieved and used to pay the victim's ransom.

15. On March 6, 2018, officers seized $101,080 and 26 gold bars from Vincent Ramos' USPV box. Ramos was the CEO of a company that facilitated the importation, exportation and distribution, internationally, of wholesale quantities of cocaine, heroin and methamphetamine. The currency and gold bars were forfeited, and Ramos was indicted and pleaded guilty to Racketeering and Drug Trafficking, in the Southern District of California. See United States v. Ramos, Case No. 18cr1404-WQH.

16. In September 2016, officers seized $592,450 and $435,190, respectively, from two USPV boxes of Mikhail Malykhin, an individual who was the leader of an identity theft/computer intrusion fraud ring. He and others were involved in a complex scheme involving altering hacked debit cards from a health insurance provider and altering the codes to cash out the debit cards. Malykhin was indicted and pleaded guilty to committing access device fraud, and the over $1,000,000 in funds seized from Malykhin's boxes were forfeited as proceeds of the fraud and were used to pay restitution to victims of Malykhin's fraud. See United States v. Malykhin, Central District of California Case No. 16cr0688-DMG.

17. In November 2015, officers seized $1,543,400 from the USPV box of Gerald Lebowitz, which he stated had been brought into the United States illegally to avoid taxes. However, further investigation revealed that Lebowitz was part of a conspiracy to distribute methaqualone, a controlled substance, and officers seized over 45 kilograms of methaqualone powder and 12 canisters of the chemical o-Taluidine, both chemical precursors, during the course of the investigation. The funds were forfeited as criminal proceeds. See United States of America v. Lebowitz, Central District of California Case No. 17cr-0053-CAS.

18. On October 28, 2015, officers seized $500,000, 22 gold bars and 15 gold coins from the USPV box of Cyrus Irani, who was the master bookmaker and head of an illegal gambling organization that operated both internet and traditional bookmaking operations, and engaged in money laundering. He pleaded guilty to Enterprise Corruption, and 14 others in his organization were convicted of various gambling, money laundering and enterprise corruption charges.

6

1 The assets found in Irani's box were forfeited as criminal proceeds.

2 <u>The Property At Issue In This Case</u>

3     19.   The assets seized from the box at issue in this case are
4 an example of persons storing assets from their illegal activity at
5 USPV, as a result of USPV's advertisements, marketing efforts and
6 other transactions and activities over the web, on-line and in the
7 mails, designed to induce persons to rent boxes at USPV to hide their
8 property.  The assets seized represent the proceeds of criminal
9 activity and were involved in money laundering activity, which
10 therefore renders them subject to forfeiture.

11     20.   Stanley Hudson was convicted on charges of federal bank
12 fraud, aggravated identity theft and aiding and abetting.  <u>See</u> <u>United</u>
13 <u>States of America v. Thomas Cochee and Stanley Hudson</u>, Case No. 08-
14 cr-715(A)-PSG.  As part of the conviction, Stanley Hudson was
15 sentenced to 94 months (<u>i.e.</u>, almost 8 years) imprisonment, five
16 years of supervised release, and ordered to pay $872,125.52 to the
17 victims he defrauded.  But Stanley Hudson has failed to voluntarily
18 pay anywhere near the sums that are due.  Instead, Stanley Hudson has
19 voluntarily paid only about $18,000.00 due on the restitution
20 judgment.

21     21.   In order to compel Stanley Hudson to pay his restitution
22 obligation, the government earlier this year submitted a demand for
23 real property sale proceeds from real estate Stanley Hudson was
24 selling without intending to use those proceeds to pay restitution.
25 As a result, the escrow company provided approximately $228,000.00 to
26 the government, which applied those funds to Stanley Hudson's
27 restitution debt and thereby compelled Stanley Hudson to use those
28 / / /

1 funds to satisfy at least a portion of the losses suffered by the
2 victims he has defrauded.
3     22. Still, over $625,000.00 remains due and owing in
4 restitution to Stanley Hudson's victims. Instead of satisfying his
5 victim loss obligations, Stanley Hudson has instead chosen to hide
6 the defendants, which include the defendants (i.e., $256,276.00 in
7 U.S. Currency and the coins), in his box at USPV (i.e., box number
8 1401).
9     23. Stanley Hudson also appears to be hiding his wealth from
10 taxing authorities. Except for one year during the five years
11 between 2014 and 2018, Stanley Hudson reported negative adjusted
12 gross income in the State of California as follows: 2014 (negative
13 $41,708); 2015 (negative $40,238); 2016 (negative $21,661); 2017
14 ($4,326); and 2018 (negative $12,290).
15     24. When officers executed a federal search warrant at Stanley
16 Hudson's residence on or about August 5, 2021, and spoke with Stanley
17 Hudson about his restitution debt, Stanley Hudson stated it was no
18 big deal that he had not paid his restitution debt. In addition,
19 when officers asked Stanley Hudson about other valuable assets
20 (including about $400,000.00 in cryptocurrency) that were once
21 situated within his USPV box, Stanley Hudson provided conflicting
22 stories and false information concerning his sources of those
23 additional assets. Stanley Hudson lacks sufficient legitimate
24 sources of income to support his acquisition and possession of the
25 defendants, and was using his box at USPV to facilitate his illegal
26 activities in shielding his assets from victims entitled to receive
27 assets in payment of their losses as reflected in Stanley Hudson's
28 restitution judgment.

FIRST CLAIM FOR RELIEF

25. Plaintiff incorporates the allegations of paragraphs 1-24 above as though fully set forth herein.

26. Based on the above, plaintiff alleges that the defendants constitute or are derived from proceeds traceable to violations of 18 U.S.C. §§ 1341 (wire fraud) and/or 1343 (mail fraud), each of which is a specified unlawful activity as defined in 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1)(D). The defendants are therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

SECOND CLAIM FOR RELIEF

27. Plaintiff incorporates the allegations of paragraphs 1-24 above as though fully set forth herein.

28. Based on the above, plaintiff alleges that the defendants constitute property involved in multiple transactions or attempted transactions in violation of 18 U.S.C. § 1956(a)(1)(A)(i) or (a)(1)(B)(i), or property traceable to such property, with the specified unlawful activity being a violation of 18 U.S.C. §§ 1341 (wire fraud) and/or 1343 (mail fraud). The defendants are therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).

THIRD CLAIM FOR RELIEF

29. Plaintiff incorporates the allegations of paragraphs 1-24 above as though fully set forth herein.

30. Based on the above, plaintiff alleges that the defendants constitute property involved in multiple transactions or attempted transactions in violation of 18 U.S.C. § 1957(a), or property traceable to such property, with the specified unlawful activity being a violation of 18 U.S.C. §§ 1341 (wire fraud) and/or

/ / /

1343 (mail fraud). The defendants are therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).

WHEREFORE, plaintiff United States of America prays:

(a) that due process issue to enforce the forfeiture of the defendants;

(b) that due notice be given to all interested parties to appear and show cause why forfeiture should not be decreed;

(c) that this Court decree forfeiture of the defendant currency to the United States of America for disposition according to law; and

(d) for such other and further relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Dated: September 13, 2021

TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRANGER
Assistant United states Attorney
Chief, Criminal Division

_____/s/_____
VICTOR A. RODGERS
MAXWELL COLL
Assistant United States Attorneys
Asset Forfeiture/General Crimes Sections

Attorneys for Plaintiff
UNITED STATES OF AMERICA

VERIFICATION

I, Lynne Zelhart, hereby declare that:

1. I am a Special Agent with the Federal Bureau of Investigation.

2. I have read the above Complaint for Forfeiture and know the contents thereof.

3. The information contained in the Complaint is either known to me personally, was furnished to me by official government sources, or was obtained pursuant to subpoena. I am informed and believe that the allegations set out in the Complaint are true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 10, 2021 at Los Angeles, California.

/s/ *Lynne Zelhart*
Lynne Zelhart